# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LAMARIS WESCOTT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 10-719-GMS |
| | ) | |
| PERRY PHELPS, Warden, and | ) | |
| JOSEPH R. BIDEN, III, Attorney General | ) | |
| of the State of Delaware, | ) | |
| | ) | |
| Respondents. | ) | |

_____

Lamaris Wescott. *Pro se* petitioner.

Gregory T. Smith. Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for respondents.

_____

## MEMORANDUM OPINION

_May 3_____, 2013
Wilmington, Delaware

Sleet, Chief Judge

## I. INTRODUCTION

Petitioner Lamaris Wescott ("Wescott") is an inmate at the James T. Vaughn

Correctional Center in Wilmington, Delaware. Wescott filed the pending petition for a writ of

habeas corpus ("petition") pursuant to 28 U.S.C. § 2254. (D.I. 1) For the reasons set forth

below, the court will dismiss his petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The facts of Wescott's case are as follows:

On March 17, 2008, Wescott attended a large outdoor party at a residence in Frankford.
The party started in the evening with a barbecue, and later a DJ was set up outside, with
music playing and people dancing. Anywhere from 100-200 people attended, including
many families with children. Darin Gibbs was one of the partygoers. There is a history
of conflict dating back more than six years between the Wescott and Gibbs families.

At some point during the party, people started arguing and pushing and shoving outside.
The music stopped and the host used a microphone to tell the troublemakers to leave.
Although the Wescotts were told to leave, they stayed. The music resumed and people
started dancing again. About five or ten minutes later, a few minutes after 10 p.m., the
pushing and shoving started again. A lot of people tried to calm the situation down, but
bottles were thrown and the dispute escalated into a fight involving five to eight males,
with Wescott and his two brothers taking on Gibbs and two other men. Gibbs testified
that he punched Wescott and knocked him down; and that when Wescott stood up,
Wescott shot him. Gibbs testified that he saw Wescott fire at him, and heard two shots,
but never really saw the gun. Jeremy Purnell, Gibbs' cousin, testified that he saw
Wescott get up from the ground, and saw flashes from a gun and heard gunshots. He
admitted that he did not actually see a gun, but testified that he saw flames shooting from
Wescott's hand and heard gunshots, and that he was "fairly" certain that it was Wescott
who fired the gun. Purnell testified that he heard five gunshots and saw Wescott fire one
toward the ground, one at Gibbs, and three into the air. Tasha Toppin, an acquaintance of
Gibbs, was standing near Gibbs and heard two shots fired, but did not see who fired them
and did not see them hit Gibbs.

Gibbs was shot about two inches above his heart. He tried to run, but fell down. While
Toppin and Gibbs' girlfriend administered first aid and waited for the ambulance,
pandemonium ensued: some fled for their cars, while others began arguing and yelling at

1

Wescott and his brother. Police from several jurisdictions, both state and local, responded. When they arrived at the scene, there was hostility among the partygoers towards the police and paramedics concerning their response time and effort. Despite the large size of the crowd, few claimed to have seen anything. Even Purnell was reluctant to speak at first, but ultimately identified Wescott as the shooter. Gibbs testified that he told a police officer that Wescott shot him, but the officer and Toppin testified that Gibbs told the officer that he did not know who shot him. Gibbs was initially treated at the scene in an ambulance, and then flown to the hospital by helicopter. He survived the shooting.

Police collected two spent .25 caliber shell casings from the scene; however, the weapon was not recovered. Based on the size of the ammunition fired from the gun, police described it as a very small pistol, "probably less than the size of your palm." A firearm of that caliber would produce a flash from the muzzle.

Wescott was not detained at the scene, but turned himself in the next day, after he heard that police were looking for him.

*Wescott v. State*, 981 A.2d 1173 (Table), 2009 WL 32827007, at *6 (Del. Oct. 13, 2009).

In May 2008, Wescott was indicted on the charges of attempted first degree murder, possession of a firearm during the commission of a felony ("PFDCF"), and possession of a firearm by a person prohibited ("PFBPP"). (D.I. 11 at 1) Wescott moved to have the PFBPP charge severed, and the severance motion was granted on October 3, 2008. Wescott went to trial on the charges of attempted first degree murder and PFDCF on October 27, 2008, and was acquitted with respect to both charges. He was subsequently tried for PFBPP on January 12, 2009. The jury found him guilty of the charge, and the Superior Court sentenced him to eight years in prison. *Id.* at 1-2. The Delaware Supreme Court affirmed Wescott's conviction on direct appeal. *Id.*

Wescott timely filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 1) The State answered that the petition should be dismissed in its entirety, and Wescott filed a response in opposition. (D.I. 11; D.I. 14)

Wescott's petition is ready for review.

## III.  GOVERNING LEGAL PRINCIPLES

### A.  The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

"to reduce delays in the execution of state and federal criminal sentences . . . and to further the

principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206

(2003)(internal citations and quotation marks omitted).  Pursuant to AEDPA, a federal court may

consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas

petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are

given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see*

*Woodford,* 538 U.S. at 206.

### B.  Standard of Review Under AEDPA

If a state's highest court adjudicated the federal claim on the merits, the federal district

court can only grant habeas relief if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of,
> clearly established Federal law, as determined by the Supreme Court of the United States;
> or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in
> light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250

F.3d 203, 210 (3d Cir. 2001).  A claim is considered to have been "adjudicated on the merits" for

the purposes of 28 U.S.C. § 2254(d)(1) if the state court "decision finally resolv[es] the parties

claims, with *res judicata* effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), *reversed on other grounds by Rompilla v. Beard*, 545 U.S. 374 (2005).

When reviewing a § 2254 petition, a federal court must presume the state court's determinations of factual issues are correct, unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

**IV. DISCUSSION**

Wescott asserts the following two grounds for relief: (1) the Superior Court erred in denying his motion to dismiss the PFBPP charge on grounds of double jeopardy and collateral estoppel; and (2) the sentencing judge violated his due process rights by sentencing him to the statutory maximum term of incarceration without specifically articulating the aggravating factors. The Delaware Supreme Court denied both arguments as meritless. Thus, Wescott will only be entitled to habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established Federal law. The court will review Wescott's claims in seriatim.

### A. Claim One: Double Jeopardy and Collateral Estoppel

In his first claim, Wescott contends that his second trial (for PFBPP) should have been

4

barred by the principles of double jeopardy and collateral estoppel, because the State failed to
present any evidence at the second trial other than the evidence that was presented during the first
trial indicating that Wescott may have shot Gibbs.

The double jeopardy clause states that no person shall "be subject for the same offense to
be twice put in jeopardy of life or limb," U.S. Const. amend. V, and provides three protections:
"It protects against a second prosecution for the same offense after acquittal. It protects against a
second prosecution for the same offense after conviction. And it protects against multiple
punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). The
constitutionality of successive prosecutions is measured under the "same elements" test
enunciated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932) and its progeny. *See
Brown v. Ohio*, 432 U.S. 161 (1977). *Blockburger*'s same elements test "inquires whether each
offense contains an element not contained in the other; if not, they are the same offense and
double jeopardy bars additional punishment and successive prosecution." *United States v. Dixon*,
509 U.S. 688, 696 (1993). The test focuses on the statutory elements of the underlying offenses,
not on the specific evidence introduced at trial. *See Iannelli v. United States*, 420 U.S. 770, 786
n.17 (1975). Thus, a successive prosecution for a crime involving the same transaction or
conduct is not barred on double jeopardy grounds if establishing each crime requires proof of a
fact that the other does not, even if there is "a substantial overlap in the proof offered to establish
the crimes." *Id.*

On direct appeal, after reciting the *Blockburger* test, the Delaware Supreme Court held
that the "prohibition against double jeopardy [was] not implicated [], because the elements of
each crime differed." *Wescott*, 2009 WL 328707, at *3. As the Delaware Supreme Court

5

explained, to prove first degree attempted murder in the first trial, the State had to show that

Wescott intended to kill or cause serious physical injury to Gibbs, respectively. To prove

possession of a firearm during the commission of a felony (first trial), the State had to show that

Wescott had the gun during the commission of a felony, namely, murder or assault. However, to

prove possession of a firearm by a person prohibited in the second trial, the State only had to

establish that Wescott possessed a gun and was prohibited from doing so. Because each of these

crimes has at least one element that each of the others does not, the Delaware Supreme Court

determined that Wescott's second trial did not offend the principles of double jeopardy.

In this proceeding, Wescott argues that the Delaware state courts erred by not dismissing

his second prosecution as barred by double jeopardy principles; he contends that the State failed

to produce any additional independent evidence in the second trial demonstrating that Wescott

possessed the gun, and "merely put on the same case that it presented at the first trial." (D.I. 14

at 6) This argument is unavailing.

To begin, the Delaware Supreme Court properly identified the *Blockburger* test as the

governing double jeopardy standard for Wescott's case. Thus, the court concludes that the

Delaware Supreme Court's decision was not contrary to clearly established federal law.

In addition, the Delaware Supreme Court's decision did not involve an unreasonable

application of *Blockburger*. To reiterate, under *Blockburger*, a single act or transaction may form

the basis for the prosecution of different offenses if each offense requires proof of a fact that the

other does not. *Blockburger*, 284 U.S. at 304. As the trial judge noted to Wescott's defense

counsel when it denied counsel's renewed motion to dismiss at the close of Wescott's second

trial, there is no Supreme Court precedent barring on double jeopardy grounds a successive trial

6

following an acquittal on different offenses, even when the offenses in both trials involved the same conduct, merely because new or independent evidence was not introduced during the second trial. (D.I. 13, App. to State's Ans. Br. in *Wescott v. State*, No. 202,2009 at B-151 to B-154) Significantly, Wescott mistakenly focuses on the nature of the evidence involved rather than the elements of the crimes and, therefore, ignores the possibility that the jury acquitted him of both charges in the first trial after determining that he lacked the requisite intent. *Id.* For instance, with respect to the attempted murder charge (or the lesser included offense of first degree assault), the jury could have concluded that Wescott possessed a firearm but did not intend to kill or injure Gibbs. And, as for the PFDCF charge, the jury could have concluded that Wescott possessed a firearm but did not possess it during the commission of a felony. *Id.* Accordingly, the court concludes that the Delaware Supreme Court reasonably applied *Blockburger* in holding that the prohibition against double jeopardy was not implicated in Wescott's second trial.

Wescott further argues that his second trial should have been barred under the collateral estoppel component of the double jeopardy clause, which prohibits the government from relitigating an issue of ultimate fact that has been determined by a valid and final judgment. *See Ashe v. Swenson*, 397 U.S. 436, 443 (1970). Significantly, however, the collateral estoppel doctrine does not bar in all circumstances the later use of evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted. *See Dowling v. United States*, 493 U.S. 342, 348 (1990). Rather, when determining the preclusive effect of a jury's prior verdict, the burden is on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding. *See Schiro v. Farley*, 510 U.S.

7

222, 233 (1994).

In this case, after identifying both Delaware and Supreme Court precedent articulating the collateral estoppel doctrine, the Delaware Supreme Court concluded that the acquittals in Wescott's first trial did not amount to an affirmative determination of any issue of ultimate fact needed to prove his guilt of possession of a firearm by a person prohibited. Therefore, the Delaware Supreme Court's decision was not contrary to clearly established federal law.

Moreover, when viewed within the framework established by the aforementioned Supreme Court cases, the court cannot conclude that the Delaware Supreme Court's decision involved an unreasonable application of the clearly established federal law involving the collateral estoppel doctrine. Given Wescott's focus on the fact that the State did not introduce any new additional evidence during the second trial showing that Wescott possessed a gun, the relevant inquiry is "whether a rational jury could have grounded its verdict upon an issue other than" Wescott's possession of a gun. *Schiro,* 510 U.S. at 233. This inquiry requires reviewing "the record of the prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter." *Id.*

Here, as aptly explained by both the trial court and the Delaware Supreme Court, the jury in the first trial could have inferred that Wescott possessed a gun and even fired it at the partygoers, but that he did not no have the intent to kill or injure required to convict him of attempted first degree murder or first degree assault. If Wescott lacked sufficient intent to be found guilty of attempted first degree murder or first degree assault, then he could not be convicted of possession of a firearm during the commission of a felony. Thus, the court concludes that the Delaware Supreme Court reasonably determined that the acquittals in

Wescott's first trial did not necessarily depend on a finding that Wescott did not possess a gun. Accordingly, the court will deny claim one for failing to satisfy § 2254(d).

### B. Claim Two: Due Process Violation

In his second claim, Wescott contends that the sentencing judge violated his due process rights by sentencing him to the statutory maximum term of incarceration without specifically articulating the aggravating factors. He alleges that the sentence was the result of judicial vindictiveness, and cites *North Carolina v. Pearce*, 395 U.S. 711 (1969) to support this claim. The Delaware Supreme Court denied these arguments as meritless under both Delaware law and federal constitutional principles.

> Pursuant to *Pearce*,
>
> whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for him doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Id.* at 726. "Otherwise, a presumption arises that a greater sentence has been imposed for vindictive purposes." *Alabama v. Smith*, 490 U.S. 794, 798-99 (1989). "[W]here the presumption applies, the sentencing authority or the prosecutor must rebut the presumption that an increased sentence or charge resulted from vindictiveness; where the presumption does not apply, the defendant must affirmatively prove actual vindictiveness." *Wasman v. United States*, 468 U.S. 559, 569 (1984). To succeed on a claim of actual vindictiveness, a defendant must "prove objectively" that a court's action "was motivated by a desire to punish him for doing something that the law plainly allowed him to do." *United States v. Goodwin*, 457 U.S. 368, 384

9

(1982).

In denying *Wescott*'s claim that the sentencing judge violated *Pearce* by not adequately articulating his reasons for the sentencing decision, the Delaware Supreme Court properly identified and articulated the rule set forth in *Pearce* and its progeny. Therefore, the Delaware Supreme Court's decision was not contrary to clearly established federal law.

Additionally, the Delaware Supreme Court reasonably applied *Pearce* and its progeny in denying claim two after determining that the *Pearce* presumption of vindictiveness was inapplicable to the facts of Wescott's case. First, contrary to Wescott's assertion, the sentencing judge did affirmatively state the reason for his sentence by explaining that, "[a]s an aggravating factor, it is certainly obvious that you were on probation at the time of this offense and that you should not have possessed a firearm or any other deadly weapon." (D.I. 13 Appellant's Op. Br. in *Wescott v. State*, No. 202,2009 at A-36 to A-37) Given the judge's identification of Westcott's probationary status as the relevant aggravating factor for sentencing purposes, Wescott's argument is factually baseless.

Moreover, over the years, the Supreme Court has narrowed the scope of the *Pearce* rule to emphasize that the goal is to prevent the "evil" of a sentencing judge's vindictiveness, and not simply "enlarged sentences after a new trial." *Alabama v. Smith*, 490 U.S. 794, 799 (1989); *Texas v. McCullough*, 475 U.S. 134, 140 (1986). Notably, when, as in *Pearce*, the offenses of conviction are the same and the sole difference at the second sentencing is an increased sentence, there is a least a basis for presuming vindictiveness; in Wescott's case, no such basis existed. As explained by the Delaware Supreme Court, *Pearce* was inapplicable to Wescott's situation because "the United States Supreme Court has cabined *Pearce* to the facts of conviction, appeal,

10

reversal, reconviction of the same offense, and a greater sentence." *Wescott*, 2009 WL 3283707, at *7. Contrarily, Wescott's first trial ended in acquittal, and his second trial involved a distinct charge that had been severed from the charges in his first trial.

For all of these reasons, the court concludes that the Delaware Supreme Court reasonably concluded that *Pearce*'s presumption of vindictiveness did not apply to the facts of Wescott's case. And, having determined that the presumption of vindictiveness is inapplicable, the court further notes that Wescott has also failed to demonstrate that the second sentencing judge exercised actual vindictiveness in sentencing him. *See Wasman v. United States*, 468 U.S. 559, 569 (1984). Accordingly, the court will deny claim two.

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court concludes that Wescott's petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, Wescott's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.